**MICHAELS LAW GROUP, APLC**
A Professional Law Corporation
Jonathan A. Michaels, Esq. – State Bar No. 180455
Dana M. Heyde, Esq. – State Bar No. 247142
Ivan U. Cisneros, Esq. – State Bar No. 256232
2801 W. Coast Highway, Suite 370
Newport Beach, CA 92663
Telephone: (949) 581-6900
Facsimile: (949) 581-6908
(jmichaels@michaelslawgroup.com)
(dheyde@ michaelslawgroup.com)
(icisneros@michaelslawgroup.com)

Attorneys for Tony Hsu and Geoff Hsu

## IN THE UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA- LOS ANGELES DIVISION

1:11 bk 15442AA

In re ABDUL HALIM SHEIKH,

Debtor.

Case No. 2:09-bk-39652-AA
Chapter 11 Case
Honorable Alan M. Ahart

**OPPOSITION TO MOTION TO DISMISS COMPLAINT**

TONY HSU, and GEOFF HSU,

Plaintiffs,

vs.

ABDUL HALIM SHEIKH, an individual; and DOES 1 through 100 inclusive,

Debtors.

Date:  August 3, 2011
Time:  10:00 a.m.
Dept:  303

FILED

JUL 13 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ MS _____

1

ORIGINAL

# TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . 6

    A.  The Complaint Clearly States a Claim Upon Which Relief May Be
        Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.  Laches Does Not Apply Here Because the Delay Was Not
        Unreasonable and Defendant Has Not Demonstrated Prejudice . . . . .7

        1.  The Delay is Not Unreasonable . . . . . . . . . . . . . . . . . . . . . . . 8

        2.  Defendant Failed to Meet the Heightened Showing of
            Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

    C.  The First, Fourth, Fifth, Sixth, and Seventh Causes of Action are
        Nondischargeable and Should Not be Dismissed . . . . . . . . . . . . . .11

    D.  The Second and Third Causes of Action are Dischargeable and Should
        Not be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    E.  If the Motion to Dismiss is Granted, Plaintiffs Request Leave to
        Amend the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

i

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*
(2009) 129 S. Ct. 1937. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bell Atlantic Corp. v. Twombly*
(2007) 550 U.S. 544, 555, 570. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bonanno v. Thomas*
(9th Cir.1962) 309 F. 2d 320, 322 . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brown v. Oxtoby*
(1941) 45 Cal. App. 2d 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cahill v. Liberty Mut. Ins. Co.*
(9th Cir. 1996) 80 F. 3d 336, 337-38. . . . . . . . . . . . . . . . . . . . . . . . . .6

*City of New York v. New York, N.H. and H.R. Co.*
(1953) 344 U.S. 293 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Conley v. Gibson,* (1957)
355 U.S. 41, 45-56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*De La Cruz v. Tormey*
(9th Cir. 1978) 582 F. 2d 45, 48. . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Farahani v. San Diego Community College Dist.*
(2009) 175 Cal. App. 4th 1486, 1494 . . . . . . . . . . . . . . . . . . . . . . . . .8

*Goodman v. McDonnell Douglas*
(8th Cir. 1979) 606 F. 2d 800, 805-06 . . . . . . . . . . . . . . . . . . . . . . . .8

*Hiett v. Inland Finance Corp.*
(1930) 210 Cal. 293, 300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*In re Beaty*
(1966) 64 Cal. 2d 760 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*
(9th Cir. 2002) 304 F. 3d 829, 834 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 11

*Johnson v. City of Loma Linda*
(2000) 24 Cal. 4th 61, 68. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Patton v. Bearden*
(6th Cir.1993) 8 F. 3d 343, 348 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Piscioneri v. City of Ontario*
(2002) 95 Cal. App. 4th 1037, 1050 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 11

*Reconstr. Fin. Corp. v. Harrisons & Crosfield*
(2d Cir. 1953) 204 F. 2d 366, 370. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Schreiber Distributing Co. v. Serv-Well Furniture Co.,* Inc.
(9th Cir. 1988) 806 F. 2d 1393, 1401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Shouse v. Pierce County*
(9th Cir. 1977) 559 F.2d 1142, 1147. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Smallpage v. Turlock Irr. Dist.*
(1938) 26 Cal. App. 2d 538. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*United States v. Admin, Enter., Inc.*
(7th Cir. 1995)  46 F. 3d 670, 673 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **Statutes**

11 U.S.C. § 523(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 12, 13

11 U.S.C. § 523(a)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12, 13

## **Rule**

Federal Rule of Civil Procedure 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The facts set forth in the Complaint clearly describe the fraudulent conduct that Defendant engaged in, which easily meet the fraudulent pleading requirements set forth by 11 U.S.C. section 523(a)(2)(A) for nondischargeable acts. Defendant Abdul Sheikh induced Plaintiffs Tony Hsu and Geoff Hsu into purchasing his business, Food USA, LLC through intentional misrepresentations, false promises, breaches of contract, and unfair business practices. Plaintiffs sought to recover the $150,000 invested into Defendant's business along with the profits falsely promised to them and other money invested into the company.

Even though the facts alleged make it clear that the First, Fourth, Fifth, Sixth, and Seventh causes of action fall squarely within 11 U.S.C. section 523(a)(2)(A), Plaintiffs will agree to amend their Complaint to reflect that particular code section, and will add allegations specific to section 523(a)(3)(B) with respect to the Second and Third causes of action.

Defendant seeks to dismiss Plaintiff's entire Complaint based on the defense of laches, even though Defendant's own evidence (the Debtor's Schedule submitted to this Court) demonstrates that he *never identified Tony Hsu and Geoff Hsu as creditors*. Defendant also cannot demonstrate that he sent notice of the bankruptcy directly to Tony Hsu or Geoff Hsu despite the fact that he had Tony Hsu's home address as early as May 2009. As discussed more thoroughly below, the two requirements for laches are not met here. Plaintiffs did not unreasonably delay in filing their Complaint, which was filed within the statue of limitations period. More importantly, Defendant has not met the heightened burden of demonstrating the extreme prejudice he will endure if this action proceeds. As a result, Defendant's Motion to Dismiss should be denied.

2

## II.    FACTUAL ALLEGATIONS[1]

In September 2008, Plaintiff Tony Hsu and his brother, Geoff Hsu, were seeking to invest in a business. Plaintiffs found Defendant and his business, Food USA, LLC, listed on a Multiple Listing Site which stated that Food USA made $17,000 a month in gross sales, had $2,469 in expenses, and made $14,000 in net profit. Plaintiffs contacted Defendant who confirmed the profits listed on the MLS site and explained that Food USA sold and distributed food and products, such as exotic meats, beverages, meat, seafood, and paper products to clients, including restaurants and hotels.

Plaintiffs and Defendant met several times to discuss the financial condition and business operations of Food USA. At these meetings, Defendant showed Plaintiffs Food USA's financial records, which included monthly sales and purchases lists, and invoices of sales from 1999 to 2008. These records confirmed that Food USA made a substantial amount of money, and after paying operating costs, the total net profits were at least $14,000 a month. Based on the financial records and invoices Plaintiffs saw, they reasonably relied upon Defendant's statements concerning the financial viability of Food USA.

Plaintiffs were also shown documents listing all of Food USA's clients and saw file cabinets full of folders that each related to a client. Defendant stated that Food USA had a strong client base and that it was very easy to open new accounts. To show Plaintiffs the number of Food USA's existing clients, Defendant took Plaintiffs on a tour where he introduced Plaintiffs to meet clients. Based on these meetings and representations, Plaintiffs relied on Defendant's representations about the amount of business conducted by Food USA.

---

[1] The Factual Background is based on the Complaint previously filed.

3

OPPOSITION TO MOTION TO DISMISS COMPLAINT

In November 2008, Defendant offered to sell the business to Plaintiffs for $250,000. Plaintiffs and Defendant agreed to a two-step purchase and entered into a six month Partnership Agreement on November 30, 2008.

Under the Partnership Agreement, the first step to the sale of Food USA required Plaintiffs to invest $150,000. This was a good faith deposit that was applied to the total purchase price if Plaintiffs decided to purchase the business at the end of six months. From December 2008 through May 2009, Plaintiffs and Defendant would be partners in Food USA, which provided an extended due diligence period in which Plaintiffs had additional time to fully examine the legitimacy of the business. Plaintiffs made two payments of $75,000 in December 2008. The second step of the purchase would occur at the end of May 2009, when Plaintiffs had the option of walking away from Food USA, or investing an additional $100,000 and own the entire company.

It was agreed that Defendant and Plaintiffs would split the expected monthly profit of $14,000 or more, with 50% going to Defendant, 25% going to Plaintiff Tony Hsu, and 25% going to Plaintiff Geoff Hsu. Defendant's representations that Food USA made a profit of at least $14,000 per month were guaranteed in Section 7.4 of the Partnership Agreement, which also stated that Plaintiffs would receive at least $7,000 a month. Defendant promised that if Food USA did not make at least $14,000 a month in net profit, he would compensate Plaintiffs for the difference to ensure that Plaintiffs received at least $7,000 per month. [Section 7.4 of Partnership Agreement].

Plaintiffs quickly realized that the business did not generate the profits touted by Defendant. Plaintiffs had to make two capital contributions in December 2008, one on December 5 for $2,500 and one on December 8 for $5,000, to enable Food USA to operate. On January 12, 2009, both Plaintiffs and

4

OPPOSITION TO MOTION TO DISMISS COMPLAINT

Defendant each received $12,000 as their December profit. However, since Plaintiffs had been required to pay $7,500 toward operating expenses, the $12,000 profit only yielded an actual profit of $4,500. Although Defendant was obligated to compensate Plaintiffs an additional $2,500 to ensure they made $7,000 for December, he did not.

The same thing happened the following months. Again, Defendant refused to contribute to any of Food USA's expenses and Plaintiffs were forced to front the operating expenses. As a result, in January, Plaintiffs made $2,100, and in February, March, April, and May, Plaintiffs made nothing. In violation of the Purchase Agreement, Defendant did not compensate Plaintiffs to ensure they made $7,000 for these months.

By April 2009, Plaintiffs realized that Defendant's representations about the company were completely false. Plaintiffs learned that Defendant did not have a good reputation in the community and that Defendant had misrepresented the number of clients Food USA had. By May 2009, Plaintiffs decided they would not be exercising their option to purchase Defendant's remaining interest in Food USA.

Plaintiffs did not learn of Defendant's bankruptcy action until the end of 2010. (Dec. Hsu). Even though Defendant knew that Plaintiffs claimed they were owed money from him, he did not provide them with notice of the bankruptcy as required under the bankruptcy code, and did not list either Tony Hsu or Geoff Hsu individually as creditors in his bankruptcy schedules. (Debtor's Schedule attached to Defendant's Request for Judicial Notice.)

OPPOSITION TO MOTION TO DISMISS COMPLAINT

## III.  ARGUMENT

### A.  The Complaint Clearly States a Claim Upon Which Relief May Be Granted

Plaintiffs' Complaint pled facts sufficient to survive Defendant's motion to dismiss. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must assume the plaintiff's allegations are true, and *must construe the complaint in the light most favorable to the plaintiff*. Cahill v. Liberty Mut. Ins. Co., (9th Cir. 1996) 80 F. 3d 336, 337-38 (Emphasis added). In deciding a 12(b)(6) motion, the court must decide whether the facts alleged, if true, would entitle the plaintiff to some form of legal remedy.  Unless, the answer is unequivocally "no," the motion must be denied. Conley v. Gibson, (1957) 355 U.S. 41, 45-56; De La Cruz v. Tormey, (9th Cir. 1978) 582 F. 2d 45, 48.

The threshold requirement is only that a plaintiff "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, (2007) 550 U.S. 544, 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, (2009) 129 S. Ct. 1937.

The Compliant more than adequately pleads facts that support the claims made for Breach of Contract, Intentional Misrepresentation, False Promise, Unfair Business Practices, and Contribution. The Complaint describes in detail the statements made by Defendant to Plaintiffs concerning the large client base and the success of Food USA that were made with the inten to induced them to invest in his business. (Complaint, pg. 3, lns. 17-19 and 21-24, pg. 4, lns. 3-13, and pg. 5, lns. 15-19, pg. 7, lns 1-28). The Complaint also extensively describes Defendant's false promises, failure to contribute to the business, and breaches of

6

1 the Partnership Agreement for each month Plaintiffs were involved in Food USA.

2 (Complaint pg. 5, ln. 23- pg. 6, ln. 28).

3          Because the Complaint specifically alleges the facts that support each

4 claim, the Compliant meets the pleading requirements for stating a claim and the

5 Motion to Dismiss should not be granted on this basis.

6

7     **B.    Laches Does Not Apply Here Because the Delay**

8           **Was Not Unreasonable and Defendant Has Not**
            **Demonstrated Prejudice**

9          The defense of laches requires unreasonable delay, plus either

10 acquiescence in the act about which plaintiff complains or prejudice to the

11 defendant resulting from the delay. *Johnson v. City of Loma Linda*, (2000) 24

12 Cal. 4th 61, 68. Defendant has the burden of proof with respect to showing facts

13 from which laches can be inferred. *Smallpage v. Turlock Irr. Dist.*, (1938) 26 Cal.

14 App. 2d 538; *Brown v. Oxtoby*, (1941) 45 Cal. App. 2d 702.

15

16          That burden becomes even more arduous when the statute of

17 limitations on the underlying claims has not expired. *Reconstr. Fin. Corp. v.*

18 *Harrisons & Crosfield*, (2d Cir. 1953) 204 F. 2d 366, 370. See *Jarrow Formulas,*

19 *Inc. v. Nutrition Now, Inc.*, (9th Cir. 2002) 304 F. 3d 829, 834 ("If the plaintiff

20 filed suit within the analogous limitations period, the strong presumption is that

21 laches is inapplicable"); *Shouse v. Pierce County*, (9th Cir. 1977) 559 F.2d 1142,

22 1147 ("It is extremely rare for laches to be effectively invoked when a plaintiff

23 has filed his action before limitations in an analogous action at law has run");

24 *Patton v. Bearden*, (6th Cir.1993) 8 F. 3d 343, 348 (noting the "strong

25 presumption that laches will not apply when the analogous statute of limitations

26 has not run, absent a compelling reason," and requiring a showing of "gross laches

27 in the prosecution of the claim).

28

7

**OPPOSITION TO MOTION TO DISMISS COMPLAINT**

Here, none of the claims asserted in the Complaint have expired. Plaintiffs' claims arose in September 2008, and the earliest bar date to any claim in the Complaint is for intentional misrepresentation, which is three years, or September 2011. Obviously, Plaintiffs' Complaint was filed on May 26, 2011, well in advance of the expiration of their claims. As a result, Defendant must meet a higher standard regarding his defense of laches.

## 1. Plaintiffs Did Not Unreasonably Delay

"The Supreme Court has repeatedly emphasized '(t)hat no arbitrary or fixed period of time has been, or will be, established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case.'" *Goodman v. McDonnell Douglas*, (8th Cir. 1979) 606 F. 2d 800, 805-06. In determining whether a delay has been unreasonable, *the circumstances in each case must be taken into consideration.* *Hiett v. Inland Finance Corp.*, (1930) 210 Cal. 293, 300 (Emphasis added). A court may consider the extent to which the *defendant is partially responsible for the delay. Farahani v. San Diego Community College Dist.*, (2009) 175 Cal. App. 4th 1486, 1494 (Emphasis added). The extent of a defendant's responsibility for the delay must be determined before the defense of laches can properly be sustained. *Piscioneri v. City of Ontario*, (2002) 95 Cal. App. 4th 1037, 1050.

"Creditors have a right to assume that the statutory 'reasonable notice' will be given to them before their claims are forever barred." *City of New York v. New York, N.H. and H.R. Co.*, (1953) 344 U.S. 293 (*the creditor does not have a duty to inquire for themselves if a bankruptcy action has commenced.*) It is undisputed that neither Tony Hsu nor Geoff Hsu were ever listed individually as creditors on any of the bankruptcy schedules prepared by Debtor. (Debtor's Schedule). Defendant's own evidence demonstrates this.

OPPOSITION TO MOTION TO DISMISS COMPLAINT

1  Here, Plaintiffs delay was not unreasonable given that they had no

2  knowledge of Defendant's bankruptcy until December 2010. (Dec. Hsu). This

3  lack of knowledge was a result of Defendant's inactions. Specifically, Defendant

4  failed to identify either Tony Hsu or Geoff Hsu individually as creditors in his

5  bankruptcy schedule and never sent them notice. (Dec. Hsu, Debtor's Schedule.)

6  While Defendant did include Plaintiffs' father's business, J.H. World

7  Express, Inc., on the Schedule, listing Plaintiffs' father's business *did not provide*

8  *notice to Plaintiffs*. (Debtor's Schedule). Even though Defendant listed J.H.

9  World Express, Inc., he did not send notice to that business, but sent it to a third

10 party, Ethan & Associates. Ethan & Associates is not a law firm, and does not

11 represent Plaintiff Tony Hsu or his father. (Exhibit "B" to Dec. Hsu). Rather, it

12 is a collection agency Plaintiff Tony Hsu contacted to assist him recover the

13 money he invested in Food USA, LLC. (Dec. Hsu).    Defendant asserts that

14 "Plaintiffs notified Defendant that they were to be contacted through their lawyers

15 and their father's company" – Ethan & Associates. (Opposition pg. 10, lns. 13-

16 14).  This statement is utterly false, and Defendant provided no evidence to

17 substantiate it. *Tony Hsu never told Defendant to contact him through Ethan &*

18 *Associates.* (Dec. Hsu). Regardless, Ethan & Associates did not send Plaintiff

19 Tony Hsu any notifications regarding Defendant's bankruptcy. (Dec. Hsu).

20

21 Moreover, Defendant had Tony Hsu's home address as early as May

22 22, 2009, when he sent a letter to Tony Hsu there. (Exhibit "A" to Dec. Hsu).

23 Despite that knowledge, Debtor never mailed any notices concerning the

24 bankruptcy Tony Hsu at that address. Defendant does not explain why he failed

25 to send a notice to Tony Hsu at his home address, or why he failed to specifically

26 identify Tony Hsu and Geoff Hsu as creditors in the bankruptcy schedules.

27 Further, Defendant cannot show any documentation that proves that Tony Hsu or

28

**OPPOSITION TO MOTION TO DISMISS COMPLAINT**

1 | Geoff Hsu ever received any notice of the bankruptcy action.  As a result of these
2 | failures, Creditors Tony Hsu and Geoff Hsu did not learn of the bankruptcy until
3 | December 2010. (Dec. Hsu).

4 |         Once Plaintiffs discovered the bankruptcy, they moved as quickly as
5 | possible to file their complaint. (Dec. Hsu). In February 2011, Plaintiff Tony Hsu
6 | was selected as a juror on a lengthy Los Angeles criminal case that took place at
7 | the Torrance Court House. (Dec. Hsu). That trial spanned more than three weeks
8 | and did not conclude until the middle of March 2011. (Dec. Hsu). Due to the trial
9 | schedule during that time, Plaintiff Tony Hsu was unable to meet with any counsel
10 | to discuss the potential claims against Defendant. (Dec. Hsu). Once the trial was
11 | over, Plaintiff Tony Hsu contacted Dana Heyde at Michaels Law Group to
12 | determine whether to proceed with his claims against Defendant. (Dec. Hsu).
13 | However, because Dana Heyde and Jonathan Michaels were involved in a multi-
14 | million dollar trial at that time, they did not meet with Plaintiff Tony Hsu until
15 | April 14, 2011. (Dec. Hsu). At that meeting, Plaintiff Tony Hsu, Dana Heyde
16 | and Jonathan Michaels discussed the claims against Defendant. (Dec. Hsu).
17 |

18 |         It took over two weeks for Plaintiff Tony Hsu to discuss this lawsuit
19 | with his brother. (Dec. Hsu). Once Plaintiffs determined to proceed, they sent the
20 | retainer agreement back to Michaels Law Group during the first week of May
21 | 2011. (Dec. Hsu). Plaintiff Tony Hsu met with Dana Heyde again on May 5,
22 | 2011, at which time, he provided Michaels Law Group with four bankers boxes
23 | full of documents pertaining to the claims. (Dec. Hsu). The Complaint in this
24 | matter, which alleged claims against Debtor for breach of contract, false promise,
25 | and intentional misrepresentation, among other things, was filed on May 26, 2011.
26 | (Dec. Hsu).  The time in which it took Plaintiffs to file the Complaint after
27 |
28 |

10

**OPPOSITION TO MOTION TO DISMISS COMPLAINT**

1  learning of the bankruptcy can hardly be said to be unreasonable given the facts
2  and circumstances above.

3  ## 2. Defendant Failed to Meet the Heightened Sowing of Prejudice

4  But even if Defendant could show Plaintiffs knew of the bankruptcy
5  action, the defense of laches should not apply here because Defendant was
6  required to plead a heightened showing of extraordinary circumstances and
7  demonstrable prejudice, which he utterly failed to do. See, e.g., *United States v.*
8  *Admin, Enter., Inc.*, (7th Cir. 1995) 46 F. 3d 670, 673. *Prejudice is not presumed*
9  *from the simple fact of delay; it must be affirmatively shown. Piscioneri v. City*
10  *of Ontario*, (2002) 95 Cal. App. 4th 1037, 1049 (Emphasis added).

11  A party asserting laches as a defense to a complaint filed under §
12  523(a)(3)(B) must make a *heightened showing of extraordinary circumstances*
13  and set forth a compelling reason why the action should be barred. See *Jarrow*
14  *Formulas, Inc. v. Nutrition Now, Inc.*, (9th Cir. 2002) 304 F. 3d 829, 834
15  (Emphasis added). Bankruptcy courts are to be especially solicitous to
16  §523(a)(3)(B) claimants when laches is invoked and may refuse to find laches
17  where a litigant offered only a bare assertion or general allegations of prejudice.
18  *In re Beaty*, (1966) 64 Cal. 2d 760. Defendant failed to show how he would be
19  prejudiced if this action proceeds. Defendant didn't even provide a generic
20  argument regarding prejudice, he just omitted any argument concerning prejudice
21  from his Motion. As Defendant failed to meet this burden, which is required for
22  success on a motion to dismiss on the basis of laches, his motion must be denied.

23  ## C. The First, Fourth, Fifth, Sixth, and Seventh Causes of Action are Nondischargeable and Should Not be Dismissed

27  Section 523(a)(3)(B) provides for the exception from discharge of
28  certain debts; most notably, for purposes of cases involving fraud on the part of

11

1   the debtor when those debts were not listed by the debtor in the schedule of

2   creditors.  Plaintiffs' first cause of action for breach of written contract, fourth

3   cause of action for fraud- intentional misrepresentation, fifth cause of action for

4   false promise, sixth cause of action for unfair business practices, and seventh

5   cause of action for contribution are all nondischargeable under 11 U.S.C. section

6   523(a)(2)(A).  The Complaint is replete with facts describing how Defendant

7   obtained over $150,000 from Plaintiffs through false pretenses, false

8   representations, and actual fraud, which all meet the required pleadings under 11

9   U.S.C. section 523(a)(2)(A).

10          The Bankruptcy Code and Rules treat these debts differently from

11  debts of the same sort that have been properly scheduled.  Specifically,

12  §523(a)(3)(B) creates a nondischargeability action for defrauded creditors who

13  *were neither listed nor scheduled and had no notice* or actual knowledge of the

14  case in time to permit the timely filing of a proof of claim or a timely request for a

15  determination of dischargeability.  11 U.S.C. section 523(a)(3)(B) (Emphasis

16  added).  Plaintiffs have described in great detail that they did not learn of the

17  bankruptcy action until December 2010 because Defendant did not list them

18  individually as creditors and did not notify them of the bankruptcy.

19

20          Defendant's argument that the denial of the Motion to file late Proofs

21  of Claims means that Plaintiffs had notice of the bankruptcy case in time to file

22  their claims completely misrepresents the Court's ruling on that motion.  That

23  motion was denied because the Court found it would prejudice Defendant if late

24  claims were filed.  The Court did *not* make a determination that Plaintiffs knew

25  about the bankruptcy case and sat on their rights and Defendant cannot

26  demonstrate otherwise.

27

28

OPPOSITION TO MOTION TO DISMISS COMPLAINT

1    Even though the facts alleged make it clear that the First, Fourth,

2    Fifth, Sixth, and Seventh causes of action fall squarely within 11 U.S.C. section

3    523(a)(2)(A), Plaintiffs will agree to amend their Complaint to reflect that

4    particular code section in reference to each cause of action.

5

6    **D.    The Second and Third Causes of Action are
7    Dischargeable and Should Not be Dismissed**

8    As previously stated, §523(a)(3)(B) creates a nondischargeability

9    action for defrauded creditors who were neither listed nor scheduled and had no

10    notice or actual knowledge of the case in time to permit the timely filing of a

11    proof of claim or a timely request for a determination of dischargeability.

12    Plaintiffs have described in great detail through the declarations filed in support of

13    their Motion to file Late Proofs and Opposition to this Motion that they did not

14    learn of the bankruptcy action until December 2010 because they were not

15    identified individually as creditors and did not receive notice of the bankruptcy.

16    However, the omission of those fact in the Complaint can be easily

17    remedied by granting Plaintiffs leave to amend the Complaint. This is the very

18    reason leave to amend is routinely granted. *Bonanno v. Thomas*, (9th Cir.1962)

19    309 F. 2d 320, 322 (if a complaint is dismissed for failure to state a claim, leave to

20    amend should be granted unless the court determines that the allegation of other

21    facts consistent with the challenged pleading could not possibly cure the

22    deficiency). Therefore, Plaintiffs request that the Court permit them to amend

23    their Complaint to fully plead what has been discussed here at length, *i.e.* the

24    absence of notice and lack of knowledge concerning Defendant's bankruptcy

25    proceeding.

26

27

28

**OPPOSITION TO MOTION TO DISMISS COMPLAINT**

**E.    If the Motion to Dismiss is Granted, Plaintiffs
Request Leave to Amend the Complaint**

By expressly stating that leave to amend "shall be freely given when justice so requires," Federal Rule of Civil Procedure, Rule 15(a) severely restricts the court's power to dismiss a complaint. Leave to amend should be denied only if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the defect." *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, Inc., (9th Cir. 1988) 806 F. 2d 1393, 1401. Therefore, if the Court grants any portion of the Motion to Dismiss, Plaintiffs request that leave to amend the Complaint also be granted.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss in its entirety; or in the alternative, if any part of the Motion to Dismiss is granted, Plaintiffs request that they be given leave to Amend the Complaint.

MICHAELS LAW GROUP, APLC

Dated: July 13, 2011              By:  _Danatt H_

Jonathan A. Michaels, Esq.
Dana M. Heyde, Esq.
Ivan U. Cisneros, Esq.
Attorneys for Tony Hsu
and Geoff Hsu

14

**OPPOSITION TO MOTION TO DISMISS COMPLAINT**

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

      I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 2801 W. Coast Highway, Suite 370, Newport Beach, CA 92663. On July 13, 2011 I served the foregoing document described as: **OPPOSITION TO MOTION TO DISMISS COMPLAINT** on the interested parties in this action by placing said document in a sealed envelope addressed as follows:

James Andrew Hinds, JR.
Law Offices of James Andrew Hinds, Jr.
21515 Hawthorne Blvd.
Suite 1150
Torrance, CA 90503

X BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Anaheim, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

BY PERSONAL DELIVERY: I caused such document to be personally delivered to each of the addresses listed above

BY ELECTRONIC MAIL: I caused copies of such document to be sent via electronic mail to the persons whose e-mail addresses are listed above  I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

X (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 13, 2011 in Newport Beach, California.

Manda Aiello

1
